UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FREDERICK TELLEZ,<br><br>                    Petitioner,<br><br>          v.<br><br>LELAND McEWEN, Acting Warden,<br><br>                    Respondent. | Case No. CV 12-3788-GW (LAL)<br><br>**FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Final Report and Recommendation is submitted to the Honorable George H. Wu, United States District Judge, under the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.[1]

## I.

## PROCEEDINGS

On May 2, 2012, Frederick Tellez ("Petitioner") filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254.  On January 30, 2013, Respondent filed an Answer to the Petition.  On March 6, 2013, Petitioner filed a Traverse. Thus, this matter is ready for decision.

---

[1] This Court submits this Final Report and Recommendation to correct minor typographical errors and add additional legal precedent in response to Respondent's Objections to the Report and Recommendation.  This Court's analysis has not been altered.

## II.

## PROCEDURAL HISTORY

On June 24, 2008, Petitioner was convicted after a jury trial in the Los Angeles County Superior Court of three counts of committing a lewd act on a child under the age of 14,[2] and two counts of continuous sexual abuse of a child.[3]  (Clerk's Transcript ("CT") at 200-04, 225-28; Volume 6 Reporter's Transcript ("RT") at 3614-19.)  The jury also found true an allegation that Petitioner committed offenses against more than one victim.[4]  (3 RT at 934-37.)  On August 19, 2008, the trial court sentenced Petitioner to a state prison term of 15 years to life plus 36 years. (CT at 221-28; 6 RT at 4219.)

Petitioner appealed the conviction to the California Court of Appeal.  (Lodgments 4-6.) On November 10, 2009, the California Court of Appeal affirmed the judgment.  (Lodgment 7.)

Petitioner next filed a petition for review in the California Supreme Court.  (Lodgment 8.) On January 13, 2010, the supreme court denied the petition.  (Lodgment 9.)

Next, Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court.  (Lodgment 10.)  On March 22, 2011, the superior court denied the petition. (Lodgment 11.)

Petitioner then filed a habeas corpus petition in the California Court of Appeal. (Lodgment 12.)  On May 5, 2011, the court of appeal denied habeas relief.  (Lodgment 13.)

Petitioner next filed a second habeas corpus petition in the Los Angeles County Superior Court.  (Lodgment 14.)  On July 18, 2011, the superior court denied relief.  (Lodgment 15.)  On August 10, 2011, the superior court denied Petitioner's request for reconsideration of its denial of habeas corpus relief.  (Lodgment 16.)

Next, Petitioner filed a second habeas corpus petition in the California Court of Appeal. (Lodgment 17.)  On November 10, 2011, the court of appeal denied relief without comment. (Lodgment 18.)

Finally, Petitioner filed a petition for writ of habeas corpus in the California Supreme

---

[2] Cal. Penal Code § 288(a).
[3] Id. at § 288.5(a).
[4] Id. at § 667.61(b).

-2-

Court.  (Lodgment 19.)  On April 18, 2012, the Supreme Court denied relief without comment.

(Lodgment 20.)

### III.

### <u>SUMMARY OF THE EVIDENCE PRESENTED AT TRIAL</u>

Because Petitioner challenges the sufficiency of the evidence, this Court has

independently reviewed the state court record.[5]  Based on this review, this Court adopts the

factual discussion of the California Court of Appeal opinion in this case as a fair and accurate

summary of the evidence presented at trial:[6]

>        The victims, A.C. and I.C., were age 14 and 13 respectively at the time of
> trial.  The girls had lived with defendant, his wife and their children since they
> were three or four years of age.
>
>        The evidence showed that defendant had been molesting A.C. since she
> was in the first or second grade.  I.C. testified she could not remember when
> defendant started molesting her but she recalled telling a friend about it when she
> was in fifth grade.  Defendant admitted "bothering" both girls.  In a recorded
> statement played during trial, he told the police that he rubbed A.C.'s vagina and
> breasts, "dry humped" her with both their pants pulled down and had her orally
> copulate and masturbate him.  In that statement, he also admitted rubbing I.C.'s
> vagina, rubbing and kissing her breasts and "dry humping" her two or three times.

(Lodgment 7 at 2.)

### IV.

### <u>PETITIONER'S CLAIMS</u>

Petitioner raises the following claims for habeas corpus relief:

(1) Trial counsel was ineffective for referring to the Jon Benet Ramsey case during

---

[5] See <u>Jones v. Wood</u>, 114 F.3d 1002, 1008 (9th Cir. 1997).

[6] "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary .
. . ." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. §
2254(e)(1)).  Thus, Ninth Circuit cases have presumed correct the factual summary set forth in an opinion of the
California Court of Appeal under 28 U.S.C. §2254(e)(1).  See, e.g., <u>Moses v. Payne</u>, 555 F.3d 742, 746 n.1 (9th Cir.
2009) (citations omitted).

closing arguments (Petition at 5; Attachment at 11-16);

(2)  Trial counsel was ineffective for failing to investigate and present evidence during trial and at sentencing of Petitioner's dysfunctional background  (Petition at 5; Attachment at 17-23);

(3)  The trial court abused its discretion in denying Petitioner's motion for substitute counsel (Petition at 5-6; Attachment at 23-31);

(4) Petitioner's convictions are not supported by sufficient evidence (Petition at 6; Attachment at 32-37);

(5) The prosecutor committed misconduct during closing arguments (Petition at 6; Attachment at 38-45); and

(6) The trial court violated Petitioner's rights to due process and a fair trial by allowing the admission of evidence of Petitioner's prior bad acts (Attachment at 46-54).

**V.**

**STANDARD OF REVIEW**

**A.    28 U.S.C. § 2254.**

The standard of review that applies to Petitioner's claims is stated in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> (d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  If these standards are difficult to meet, it is because they were meant to be. As the Supreme Court stated in <u>Harrington v. Richter</u>,[7] while the AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings[,]" habeas relief may be granted only "where there is no possibility fairminded

---

[7] 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011).

jurists could disagree that the state court's decision conflicts" with United States Supreme Court precedent.  Further, a state court factual determination must be presumed correct unless rebutted by clear and convincing evidence.[8]

**B.   Sources of "Clearly Established Federal Law."**

According to <u>Williams v. Taylor</u>,[9] the law that controls federal habeas review of state court decisions under the AEDPA consists of  holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision."  To determine what, if any, "clearly established" United States Supreme Court law exists, a federal habeas court also may examine decisions other than those of the United States Supreme Court.[10]  Ninth Circuit cases "may be persuasive."[11]  A state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law, if no Supreme Court decision has provided a clear holding relating to the legal issue the habeas petitioner raised in state court.[12]

Although a particular state court decision may be both "contrary to" and an "unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings under <u>Williams</u>.

A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts.[13]  If a state court decision denying a claim is "contrary to" controlling Supreme Court precedent, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)."[14]  However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the

---

[8] 28 U.S.C. § 2254(e)(1).

[9] 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

[10] <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.6 (9th Cir. 2000).

[11] <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 1999).

[12] <u>Brewer v. Hall</u>, 378 F.3d 952, 955 (9th Cir. 2004); <u>see also</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 77, 127, S. Ct. 649, 649, 166 L. Ed. 2d 482 (2006) (in the absence of a Supreme Court holding regarding the prejudicial effect of spectators' courtroom conduct, the state court's decision could not have been contrary to or an unreasonable application of clearly established federal law).

[13] <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam) (citing <u>Williams</u>, 529 U.S. at 405-06).

[14] <u>Williams</u>, 529 U.S. at 406.

reasoning nor the result of the state-court decision contradicts them."[15]

State court decisions that are not "contrary to" Supreme Court law may be set aside on federal habeas review only "if they are not merely erroneous, but 'an <u>unreasonable</u> application' of clearly established federal law, or based on 'an <u>unreasonable</u> determination of the facts.'"[16] Accordingly, this Court may reject a state court decision that correctly identified the applicable federal rule but unreasonably applied the rule to the facts of a particular case.[17]  However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable" under <u>Woodford v. Visciotti</u>.[18]  An "unreasonable application" is different from merely an incorrect one.[19]

Where, as here with respect to Claim Six, the California Supreme Court denied a petitioner's claims without comment, the state high court's "silent" denial is considered to be "on the merits" and to rest on the last reasoned decision on these claims - in the case of Claim Six, the grounds the California Court of Appeal stated in its decision on direct appeal.[20]

Where, as here with Claims One through Five, the state courts have supplied no reasoned decision for denying the petitioner's claims on the merits, this Court must perform an "'independent review of the record' to ascertain whether the state court decision was objectively unreasonable."[21]

## VI.

## DISCUSSION

**A.**     **Ineffective Assistance of Counsel.**

    **1.**     **Background.**

In Claim One, Petitioner argues his trial counsel was ineffective during closing

---

[15] <u>Early</u>, 537 U.S. at 8.
[16] <u>Id.</u> at 11 (citing 28 U.S.C. § 2254(d)).
[17] <u>See</u> <u>Williams</u>, 529 U.S. at 406-10, 413.
[18] 537 U.S. 19, 27, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002).
[19] <u>Williams</u>, 529 U.S. at 409-10.
[20] <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-06, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).
[21] <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003) (citing <u>Delgado v. Lewis</u>, 223 F.3d 976, 981-82 (9th Cir. 2000)).

arguments for referring to John Mark Karr, a former suspect in the Jon Benet Ramsey murder. (Petition at 5; Attachment at 11-16.)  In Claim Two, Petitioner argues his trial counsel was ineffective at trial and during the sentencing hearing for failing to present to the trial court evidence of Petitioner's dysfunctional background.  (Petition at 5; Attachment at 17-23.)

### 2.     Legal Standard.

In order to prevail on his ineffective assistance of counsel claim under the United States Supreme Court decision in Strickland v. Washington, Petitioner must prove two elements:  (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced him.[22]  A court evaluating an ineffective assistance of counsel claim does not need to address both elements of the test if a petitioner cannot prove one of them.[23]

To prove deficient performance, a petitioner must show that counsel's performance was below an objective standard of reasonableness.[24]  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[25]  Only if counsel's acts or omissions, examined in light of all the surrounding circumstances, fell outside this "wide range" of professionally competent assistance will petitioner prove deficient performance.[26]

Proof of deficient performance does not require habeas corpus relief if the error did not result in prejudice.[27]  Accordingly, a petitioner must also show that, but for counsel's unprofessional errors, the result of the proceedings would have been different.[28]  Thus, a petitioner will prevail only if he can prove that counsel's errors resulted in a "proceeding [that] was fundamentally unfair or unreliable."[29]

### 3.     Analysis.

#### a.     Claim One: Closing Arguments.

In Claim One, Petitioner argues his trial counsel was ineffective during closing

---

[22] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[23] Id. at 697.
[24] Id. at 687-88.
[25] Id. at 689.
[26] Id. at 690.
[27] Id. at 691.
[28] Id. at 694.
[29] Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993).

arguments for making references to John Mark Karr, a former suspect in the Jon Benet Ramsey murder.  (Petition at 5; Attachment at 11-16.)  Petitioner's claim relies on the following portion of his trial counsel's closing argument:

> [Defense Counsel]:  . . . Mr. Tellez spoke with the police, and there was a recorded phone call.  What about that?  Why do people admit to doing things they didn't do?  I'd like to take you all back a little bit.  Jon Binet Ramsey (phonetic) and John Mark Kerr (phonetic).  John Mark Kerr (phonetic) was in Thailand.  He admitted to molesting and killing a little girl from Boulder, Colorado.
>
> [The Prosecutor]:  I'm going to object as outside the scope of the evidence in this case, not argument.
>
> The Court:  First of all, let me just make two comments.  First of all, when you say a recorded phone call, did you misspeak?
>
> [Defense Counsel]:  I must have misspoke.
>
> The Court:  That's what I thought.  And that happens from time to time.  Ladies and gentlemen, I am sure that [defense counsel] was referring to the statement which was recorded.  As far as the objection to arguing outside the record, counsel, that is, both the district attorney and defense counsel, are allowed latitude in their arguments to argue reasonable conclusions in matters that can be drawn from outside the record.
>
> So it's within the discretion of the court to permit argument that is sometimes from outside of the record in order to make a point.  Since I am going to allow it in this particular case, of course, this case had nothing [to] do with the famous Ramsey case in Colorado, but I think [defense counsel] just simply wants you to understand a particular point.
>
> So I will let him make that point.  It's up to you to decide what relevance it has here.
>
> Go ahead.
>
> [Defense Counsel]:  Thank you, your honor.

My point is sometimes people confess to doing [things] they don't do. That's why you need investigation. That's why you need corroboration.

What about Mr. Tellez? Why does he admit it? Well, you hear the testimony. You hear the tape. Mentions in the tape that he wants the girls to get this over with. He wants them to get out of court, because he knows that, if there is an investigation[] he will be cleared.

Perhaps maybe then who knows? Maybe it was they needed some attention, or some type of disorder or something. But focus here that sometimes people confess to doing things they didn't do. . .

. . .

So why do people admit to doing things they don't do? And, again, I ask you to think back. Think about this John Binet Ramsey (phonetic) case. Why did this man confess to molesting and murdering a girl? Why do people do these things? We don't know.

Maybe Mr. Tellez thought that by admitting to these things, the girls would get out of trouble, that the police would actually investigate, and through their investigation he'd be cleared. Maybe there's other issues that we just don't know about.

(6 RT at 3376-78, 3392-93.)

Here, Petitioner's trial counsel was faced with defending a client who had confessed to the crimes with which he was charged. (Supplemental CT at 14-16, 24-31, 34-36.) Under these circumstances, trial counsel made a reasonable strategic decision in closing arguments to bring the jury's attention to an individual who famously confessed to a crime he did not commit. By doing so, trial counsel presented perhaps the only defense available to him, i.e. that Petitioner had falsely confessed. Petitioner's trial counsel was not ineffective for presenting such an argument.

Neither did trial counsel's argument prejudice Petitioner. First, Petitioner's own words when he confessed to the crimes and the testimony of the victims at trial that Petitioner sexually

abused them repeatedly over the course of many years would have carried greater weight in the jury's deliberations than trial counsel's passing reference to an unrelated individual.  In addition, to the extent there was any prejudice flowing from trial counsel's argument, the trial court mitigated this prejudice by instructing the jury that Petitioner's case had nothing to do with the Jon Benet Ramsey case and that the statements of the attorneys were not evidence.  (6 RT at 3325, 3377.)

> **b.**     **Claim Two:  Failure to Investigate and Present Background Evidence.**

In Claim Two, Petitioner argues his trial counsel was ineffective for failing to investigate Petitioner's dysfunctional background and present evidence of this dysfunction as a mitigating factor during sentencing.[30]  (Petition at 5; Attachment at 17-22.)  Specifically, Petitioner argues counsel should have investigated and presented the following evidence "1.) [Petitioner's] dysfunctional family background, this would have shown that petitioner had an ongoing stressful relationship with his wife and family.  2.) Alcohol abuse:  drinking since age 13, petitioner's constant abuse of alcohol had always been problematic to petitioner and his family.  3.) Petitioner's medical-health history:  possible erectile dysfunction which could have been brought on by the stress or the abuse of alchohol, p[sy]c[h]ological or medical problems, or the use of medication for high blood pressue which is known to cause impotence.  4.) high blood pressure and 5.) prostate problems."  (Attachment at 18-19.)

Here, Petitioner has not shown that there existed any mitigating factors to be investigated.  The only reference in the record before this Court to any of the mitigating factors specified by Petitioner are his own self-serving statements in his court pleadings and his interview with police.  (See, e.g., Attachment at 18-19; Supplemental CT at 9, 16-17, 42-47.)  Such unsupported and conclusory allegations are insufficient to prove ineffective assistance.[31]

Accordingly, the state courts' rejection of each of Petitioner's ineffective assistance of

---

[30] Petitioner argues that counsel should have presented mitigating evidence at the sentencing phase of his trial and cites to cases involving the penalty phase of death penalty trials.  This Court notes that Petitioner's trial was not a death penalty trial and, thus, did not involve a penalty, or sentencing, phase.  Rather, Petitioner received a standard hearing at which he was sentenced.

[31] Womack v. Del Papa, 497 F.3d 998, 1004 (9th Cir. 2007) (denying ineffective assistance of counsel claim where petitioner's allegations were supported only by his own self-serving statements).

counsel claims was not contrary to, or an unreasonable application of, federal law.  Habeas relief is not warranted on Claims One and Two.

**B.**     **Substitution of Counsel.**

    **1.**     **Background.**

        In Claim Three, Petitioner argues the trial court abused its discretion when it denied Petitioner's motion to substitute counsel.  Petitioner argues that he was deserving of substitute counsel because his trial counsel strongly encouraged Petitioner to accept a plea agreement in exchange for a 20 year sentence, that counsel angrily insisted that Petitioner did not have a strong case, that counsel suggested Petitioner plead guilty, and that counsel did not want to proceed to trial.  (Petition at 5-6; Attachment at 23-31.)

        During jury selection, Petitioner moved the trial court to relieve his trial counsel and replace him with a new lawyer.  (4 RT at 1863.)  Petitioner argued that he did not believe counsel was helping him, that he did not trust counsel, and that the proceedings were moving too fast.  (4 RT at 1863.)  Petitioner further complained that counsel would not answer his family's questions and that he merely encouraged Petitioner to plead guilty.  (4 RT at 1865-66.)

        The trial court reminded Petitioner of the strong evidence against him, including his own confession, (4 RT at 1866-69), and then advised Petitioner that his counsel was doing a very thorough and thoughtful job up to that point in trial (4 RT at 1869-70).  The court explained that counsel had merely been honest with Petitioner about the difficulties he would face at trial in light of the evidence against him.  (4 RT at 1869-70.)  The court then denied Petitioner's request for a substitution of counsel, finding that counsel's "performance is -- and this understates it -- quite sufficient, quite adequate, and quite professional."  (4 RT at 1870-71.)

    **2.**     **Legal Standard.**

        The Sixth Amendment accords a defendant the right to the assistance of counsel at every critical stage of criminal proceedings.[32]  The right to counsel includes the right to effective representation.[33]  A defendant has a qualified right to retained counsel of choice, but an indigent

---

[32] <u>Gideon v. Wainright</u>, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

[33] <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

defendant, while entitled to appointed counsel, is not entitled to appointed counsel of choice.[34] In addition, the Sixth Amendment does not guarantee a "meaningful relationship" between defendant and his counsel.[35]

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas.[36] The Sixth Amendment is not violated by "every conflict or disagreement between the defendant and counsel."[37] On federal habeas review, the question is not whether the trial court abused its discretion in denying a motion, but rather whether a conflict between the defendant and counsel "prevented effective assistance of counsel."[38] A federal habeas court must determine the nature and extent of the conflict between the petitioner and counsel and whether that conflict deprived the petitioner of the representation to which he was entitled under the Sixth Amendment.[39] "Disagreements over strategical or tactical decisions do not rise to the level of a complete breakdown in communication" so as to require substitution of counsel.[40]

### 3. Analysis.

Petitioner's allegations establish nothing more than that before trial he and counsel had a heated disagreement over the tactical course they should take. It is understandable, in light of the evidence of Petitioner's guilt, that Petitioner's counsel believed the best strategy for handling Petitioner's case was to accept a plea deal and avoid trial. Yet, once Petitioner refused to accept a plea agreement and demanded a trial, counsel capably represented Petitioner. Counsel was engaged, thoroughly cross-examined witnesses, strenuously objected to various evidentiary rulings, and constructed a closing argument that attempted to explain away Petitioner's damning confession. Petitioner has not stated what more counsel could have done to defend him at trial. In fact, as detailed in Section A above, this Court has found no merit to the allegations of

---

[34] Hendricks v. Zenon, 993 F.2d 664, 671 (9th Cir. 1993).

[35] Morris v. Slappy, 461 U.S. 1, 14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983).

[36] Bland v. Cal. Dep't of Corr., 20 F.3d 1469, 1475 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000) (en banc).

[37] Schell v. Witek, 218 F.3d 1017, 1027 (9th Cir. 2000) (en banc).

[38] Id. at 1026.

[39] Id. at 1027.

[40] Stenson v. Lambert, 504 F.3d 873, 886 (9th Cir. 2007).

1   ineffective assistance Petitioner has lodged against counsel.  Under these circumstances,

2   Petitioner cannot show that there was a conflict between him and counsel so great that it denied

3   him his Sixth Amendment right to the effective assistance of counsel.

4   　　　　Accordingly, the state courts' rejection of Petitioner's claim regarding his motion to

5   substitute counsel was not contrary to, or an unreasonable application of, federal law.  Habeas

6   relief is not warranted on Claim Three.

7   **C.**   **Sufficiency of the Evidence.**

8   　　　　**1.**   **Background.**

9   　　　　In Claim Four, Petitioner argues the prosecution did not present sufficient evidence at

10  trial to support his convictions because the prosecution did not tie Petitioner to the sexual

11  assaults through DNA or other physical evidence.  (Petition at 6; Attachment at 32-37.)

12  　　　　**2.**   **Legal Standard.**

13  　　　　The Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant

14  may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to

15  constitute the crime with which he is charged."[41]  The United States Supreme Court announced

16  the federal standard for determining the sufficiency of the evidence to support a conviction in

17  Jackson v. Virginia.[42]  Under Jackson, "[a] petitioner for a federal writ of habeas corpus faces a

18  heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction

19  on federal due process grounds."[43]  The Supreme Court has held that "the relevant question is

20  whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

21  trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[44]

22  "Put another way, the dispositive question under Jackson is 'whether the record evidence could

23  reasonably support a finding of guilt beyond a reasonable doubt.'"[45]

24  　　　　When the factual record supports conflicting inferences, the federal court must presume,

25  even if it does not affirmatively appear on the record, that the trier of fact resolved any such

26

27

28

---

[41] In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).
[42] 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).
[43] Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).
[44] Jackson, 443 U.S. at 319.
[45] Chein v. Shumsky, 373 F.3d 978, 982-83 (9th Cir. 2004) (en banc) (quoting Jackson, 443 U.S. at 318).

1  conflicts in favor of the prosecution, and the federal court must defer to that resolution.[46]

2  Additionally, "[c]ircumstantial evidence and inferences drawn from it may be sufficient to

3  sustain a conviction."[47]  Also, the federal court must refer to state law to define the substantive

4  elements of the criminal offense and determine what evidence is necessary to convict on the

5  crime charged.[48]

6       The <u>Jackson</u> standard applies to federal habeas claims attacking the sufficiency of the

7  evidence to support a state conviction.[49]  In addition, the AEDPA requires the federal court to

8  "apply the standards of <u>Jackson</u> with an additional layer of deference."[50]  The federal court must

9  ask "whether the decision of the California Court of Appeal reflected an 'unreasonable

10  application' of <u>Jackson</u> and <u>Winship</u> to the facts of this case."[51]

11       **3.   <u>Analysis.</u>**

12       Petitioner was charged with committing a lewd act on a child under the age of 14

13  pursuant to California Penal Code section 288(a), and with continuous sexual abuse pursuant to

14  California Penal Code section 288.5(a).  Penal Code section 288(a) provides that "any person

15  who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any

16  part or member thereof, of a child who is under the age of 14 years, with the intent of arousing,

17  appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty

18  of a felony."[52]  Penal Code section 288.5(a) provides that "[a]ny person who either resides in the

19  same home with the minor child or has recurring access to the child, who over a period of time,

20  not less than three months in duration, engages in three or more acts of substantial sexual

21  conduct with a child under the age of 14 years at the time of the commission of the offense . . . or

22  three or more acts of lewd or lascivious conduct . . . with a child under the age of 14 years at the

23  time of the commission of the offense is guilty of the offense of continuous sexual abuse of a

---

[46] <u>Jackson</u>, 443 U.S. at 326.
[47] <u>Walters v. Maass</u>, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).
[48] <u>Jackson</u>, 443 U.S. at 324 n.16; <u>Juan H.</u>, 408 F.3d at 1275.
[49] <u>Juan H.</u>, 408 F.3d at 1274; <u>see also</u> <u>Bruce v. Terhune</u>, 376 F.3d 950, 957 (9th Cir. 2004).
[50] <u>Juan H.</u>, 408 F.3d at 1274.
[51] <u>Id.</u> at 1275 & n.13.
[52] Cal. Penal Code § 288(a).

-14-

child."[53]

Nothing in the statutes cited above requires DNA or other physical evidence to prove a defendant guilty. In fact, in California the uncorroborated testimony of a child is sufficient, by itself, to support a conviction for committing a lewd act on a child pursuant to California Penal Code section 288(a).[54] Thus, Petitioner's conviction did not have to be supported by DNA or other physical evidence.[55]

Moreover, there was overwhelming evidence of Petitioner's guilt apart from any physical evidence. As to Petitioner's convictions under Penal Code section 288(a), he admitted to police that he touched the victims' breasts, buttocks, and vaginal areas; that he had the victims masturbate and orally copulate him; that he laid on top of the victims with his pants pulled down; and that he ejaculated during the abuse of both girls. (Supplemental CT at 24-30, 34-36.) Petitioner's confession was corroborated by the victims' testimony. (5 RT at 2115, 2117, 2119-23, 2125-30, 2135, 2141-42, 2203, 2219-26.)

As to Petitioner's convictions under Penal Code section 288.5(a), there was no dispute the victims lived with Petitioner. Moreover, Petitioner admitted he molested the girls over a 2 to 3 year period. (Supplemental CT at 25-27, 30.) Petitioner confessed that, during this time period, he made A.C. orally copulate him four to five times (Supplemental CT at 24), and masturbate him one to four times (Supplemental CT at 26), and that he laid on top of her with his pants down two to three times (Supplemental CT at 37). He further confessed that he rubbed I.C.'s buttocks two to three times (Supplemental CT at 36) and laid on top of her with his pants down two to three times (Supplemental CT at 36-37). The victims testified that the abuse was continuous for nearly a decade. (5 RT at 2117, 2125-26, 2203, 2220, 2222, 2226.)

Viewing this evidence in favor of the prosecution and weighing all inferences in favor of the judgment, as it must, this Court finds that a reasonable juror could have found this evidence

---

[53] Cal. Penal Code § 288.5(a).
[54] People v. Harlan, 222 Cal.App.3d 349, 451 (1990).
[55] A finding to the contrary would be unjust, as demonstrated by the facts of this case. There were no allegations Petitioner penetrated the victims, and the last instances of abuse alleged by the victims occurred approximately a week before Petitioner's arrest. Under these circumstances, the authorities could not have expected to find any DNA evidence. Obviously, the lack of DNA evidence does not mean that Petitioner could not have abused the victims in the manner they alleged.

sufficient to support Petitioner's convictions.  Accordingly, this Court finds that the California courts' denial of Petitioner's sufficiency of the evidence claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  Habeas relief is not warranted on Claim Four.

**D.**     **Prosecutorial Misconduct.**

    **1.**     **Background.**

In Claim Five, Petitioner argues the prosecutor committed misconduct during closing arguments.  (Petition at 6; Attachment at 38-45.)

During closing arguments, Petitioner's trial counsel attempted to discredit the testimony of I.C.'s friend Veronica, who testified that I.C. told her about the molestation.  (5 RT at 2705.) Defense counsel questioned how well Veronica knew I.C., arguing that she had never gone to I.C.'s house to have dinner or sleep over.  (6 RT at 3389.)  In her rebuttal argument, the prosecutor responded to defense counsel's assertion, as follows:

> [The Prosecutor]:  . . . Veronica Alaniz, rather than trying to analyze whether or not how close these girls are in friendship, you do know this. [I.C.] told you, "She's the only one I told."  So however much defense may wish to characterize [I.C.] as some sort of emotional butterfly and Veronica as some sort of quiet lonely child, we know that [I.C.] trusted her, but it was too big for [I.C.], and she couldn't deal with having her know, so she backed off a little, as a 10-year-old might with such information.

> But when you start to try to analyze that relationship, doesn't do you a lot of good to say, "Oh, they didn't have sleepovers."  Because you know why these girls, [A.C.] and [I.C.], they never got to have sleepovers with who they wanted to have sleepovers with?

> [Defense Counsel]:  Objection.

> The Court:  That will be overruled.  Go ahead and complete your remarks.

> [The Prosecutor]:  The defendant decided who they got to have sleepovers with.  And it was only with him.

(6 RT at 3404.)

### 2.    Legal Standard.

A habeas petition alleging prosecutorial misconduct will be granted only when the misconduct did "so infect the trial with unfairness as to make the resulting conviction a denial of due process."[56]  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."[57]  Under Darden v. Wainwright,[58] the first issue is whether the prosecutor's remarks or conduct were improper; if so, the next issue is whether such remarks or conduct infected the trial with unfairness.[59]

A prosecutor is permitted to argue reasonable inferences from the evidence.[60]  "Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom."[61]  A prosecutor's statement during closing arguments that is a direct response to a defense argument is not misconduct.[62]

### 3.    Analysis.

The prosecutor's statement was a direct response to an argument made by the defense. As such, the prosecutor's statement did not amount to misconduct.  Accordingly, the state courts' rejection of Petitioner's prosecutorial misconduct claim was not contrary to, or an unreasonable application of, federal law.  Habeas relief is not warranted on Claim Five.

### E.    Admission of Evidence.

### 1.    Background.

In Claim Six, Petitioner argues the trial court violated his Fifth Amendment rights by admitting evidence of Petitioner's "prior bad acts."  (Attachment at 46-54.)  Specifically, Petitioner challenges the trial court's admission of evidence that Petitioner "had arguments with

---

[56] Greer v. Miller, 483 U.S. 756, 765, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) ).
[57] Smith v. Phillips, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).
[58] 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986).
[59] Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005) (citing Darden, 477 U.S. at 181).
[60] Duckett v. Godinez, 67 F.3d 734, 742 (9th Cir. 1995).
[61] Ceja v. Stewart, 97 F.3d 1246, 1253-54 (9th Cir. 1996).
[62] Darden, 477 U.S. at 182.

his wife and daughter, did not send the girls to counseling and did not allow the girls (sic) father inside his residence."  (Attachment at 46.)

    **2.**    <u>**State Court Opinion.**</u>

The California Court of Appeal on direct review accurately outlined the facts underlying Petitioner's claim and denied the claim, as follows:

> The court permitted the prosecution to introduce a portion of defendant's recorded interview with the police in which he admitted that 10 months earlier he had an argument with his wife and daughter in which he struck them both. Defendant told the police that he swung at his daughter, missed, and hit his wife knocking her down.  Then, turning to his daughter, he "faked a left, got her with an uppercut right and she went to the floor."

> The court also admitted evidence that before the molestation came to light, the school principal asked defendant to obtain counseling for the girls because they were misbehaving and "acting out" and that defendant refused.

> Finally, the girls' father testified that it was "difficult" for him to visit the girls.  Defendant refused to give him their home telephone number, preventing him from making advance arrangements for visits.  But if he came to the house unannounced and defendant was not present defendant's wife would not allow him to see his children.  Defendant's wife often refused to allow him to see his children even if he had a prior arrangement to do so, telling him the girls were "in trouble."

> The court overruled defendant's objections to this evidence.

. . .

> The girls told the police that if they resisted defendant's sexual molestation he would become angry and hit them.  Defendant denied that he ever struck either girl.  Evidence that defendant struck his wife and daughter in anger supported the girls' testimony that defendant also struck them in anger and undermined his denial.  Specific instances of a defendant's conduct are not

inadmissible under Evidence Code section 1101, subdivision (c) when offered to "support or attack the credibility of a witness."

Nor was the evidence unduly prejudicial under Evidence Code section 352. It is unlikely that the jury calmly accepted the graphic testimony about defendant's repeated sexual molestation of his young nieces but became outraged over evidence that he once struck his wife and daughter. (Cf. People v. Ewoldt (1994) 7 Cal.4th 380, 405 [evidence of uncharged crime not prejudicial where that evidence is less inflammatory than evidence of the charged crime.].)

The evidence that defendant rejected the school's recommendation that he seek counseling for the girls was relevant because such evidence had a logical tendency to show he was afraid that during counseling the girls would disclose his sexual abuse. (Cf. People v. Wong (1973) 35 Cal.App.3d 812, 831 [defendant's effort to conceal evidence of homicide probative of his guilt].) Further, there was nothing inflammatory about this evidence.

Likewise, evidence that defendant thwarted the father's visits with the girls by refusing to give the father the girls' telephone number had a tendency in reason to show that defendant wanted to minimize the girls opportunities to disclose to their father defendant's molestation of them.

(Lodgment 7 at 3-4 (footnote omitted).)

### 3. **Teague Bar.**

Respondent contends that this claim is barred by the anti-retroactivity doctrine of Teague v. Lane.[63] (Answer at 40-43.) In Teague, the Supreme Court held that, with two narrow exceptions, a new rule of constitutional law cannot be applied retroactively on federal collateral review to disturb a state conviction that became final before the new rule was announced.[64] Federal habeas courts must decide at the outset whether Teague is implicated if the respondent argues that the petitioner seeks the benefit of a new rule.[65]

---

[63] 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).
[64] Id. at 310-12 (plurality opinion).
[65] Caspari v. Bohlen, 510 U.S. 383, 389, 114 S. Ct. 948, 127 L. Ed. 2d 236 (1994).

Respondent argues that granting habeas relief on Claim Six would require the announcement of new rule of constitutional law, i.e. that the admission of prior bad acts evidence violates the federal Constitution.  (Answer at 42.)  It is well settled in the Ninth Circuit that admission of irrelevant and overtly prejudicial evidence violates due process if such evidence renders a trial fundamentally unfair.[66]

Even though, as explained below, the lack of Supreme Court rulings on this point means that there is no clearly established law for purposes of AEDPA review, circuit court holdings suffice to create clearly established rules of law under Teague.[67]  Teague does not foreclose the specific application of a previously established rule.[68]  This Court, therefore, rejects Respondent's Teague argument.[69]

### 4.    **Analysis.**

To the extent Petitioner argues that the admission of this evidence violated state rules of evidence, he fails to state a federal claim.  Federal habeas relief is not available for errors of state law only.[70]

Moreover, to the extent Petitioner argues that the admission of the evidence violated his federal constitutional rights, he does not state a claim for federal habeas corpus relief because he has not shown a violation of clearly established federal law.[71]  Although the Supreme Court stated in Williams v. Taylor,[72] that habeas relief should be granted when constitutional errors have caused a trial to be fundamentally unfair, the Supreme Court has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant habeas relief.  In fact, the Supreme Court has "expressly reserved" the

---

[66] See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991); see also Bernal v. Biter, CV 14-6650-MWF (RNB), 2015 WL 1383508, *11-*12 (C.D. Cal. March 24, 2015); see also U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a) (courts may cite unpublished opinions issued on or after January 1, 2007).

[67] Leavitt v. Arave, 383 F.3d 809, 819 (9th Cir. 2004).

[68] See Wright v. West, 505 U.S. 277, 308-09, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992) (Kennedy, J., concurring).

[69] See Fletcher v. Dobson-Davis, CV 09-9107-JFW (MAN), 2013 WL 5591940, *17-*18 (C.D. Cal. Oct. 10, 2013) (finding claim regarding admission of evidence not Teague barred).

[70] See 28 U.S.C. § 2254(a); see also Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

[71] See Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (noting that the Supreme Court has not yet clearly ruled that the admission of irrelevant or overtly prejudicial evidence constitutes a due process violation).

[72] 529 U.S. 362, 375, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

1    question of whether the admission of prior bad acts, or propensity evidence, violates due

2    process.[73]  Absent such "clearly established Federal law," this Court cannot find that the state

3    courts' denial of Petitioner's claim was an unreasonable application of Supreme Court

4    precedent.[74]

5            Even assuming Petitioner has raised a cognizable claim, he cannot show that the

6    admission of the testimony rendered his trial fundamentally unfair.[75]  "Only if there are no

7    permissible inferences the jury may draw from the [disputed] evidence can its admission violate

8    due process."[76]  As the California Court of Appeal explained, the jury could have drawn

9    reasonable inferences from the evidence at issue.  First, evidence that Petitioner had, on at least

10   one occasion, used violence against family members supported the victims' claims that he would

11   hit them if they refused his advances.  In addition, evidence that Petitioner did not send the girls

12   to counseling and limited their visitation with their father reasonably inferred that Petitioner

13   sheltered the girls from any opportunity to disclose the abuse.

14           Accordingly, the state courts' rejection of Petitioner's claim regarding the admission of

15   evidence was not contrary to, or an unreasonable application of, federal law.  Habeas relief is not

16   warranted on Claim Six.

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24

25   [73] Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (rejecting habeas petitioner's challenge to introduction of
     propensity evidence because the Supreme Court has "expressly reserved" consideration of the issue).

26   [74] Wright v. Van Patten, 552 U.S. 120, 126, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) (where Supreme Court's cases
     give no clear answer to the question presented, state court's rejection of petitioner's claim did not constitute an

27   unreasonable application of clearly established Federal law).
     [75] See Williams, 529 U.S. at 375 (habeas relief is warranted when constitutional errors have rendered the trial

28   fundamentally unfair).
     [76] Jammal, 926 F.2d at 920.

## VII.

## **RECOMMENDATION**

IT THEREFORE IS RECOMMENDED that the District Court issue an Order:  (1) approving and accepting this Final Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED:  November 12, 2015

_____
HONORABLE LOUISE A. LAMOTHE
United States Magistrate Judge